1   RON BENDER (SBN 143364)
    TANIA M. MOYRON (SBN 235736)
2   LEVENE, NEALE, BENDER, RANKIN
    & BRILL L.L.P.
3   10250 Constellation Blvd., Suite 1700
    Los Angeles, California 90067
4   Telephone: (310) 229-1234
    Facsimile: (310) 229-1244
5   Email: rb@lnbrb.com; tmm@lnbrb.com

6   Attorneys for Chapter 11 Debtors
    and Debtors in Possession
7

8               UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
9                   (LOS ANGELES DIVISION)

10  In re:                                    ) Case No. 2:09-bk-19846-EC
                                              )
11  Karawia Industries, Inc., a California    ) Chapter 11
    corporation, et. al.,                     )
12                                            ) Jointly Administered with Case Nos.:
                                              )
13          Debtors.                          )
    _____          ) Case No. 2:09-bk-19847-EC
14  □ Affects All Debtors                     ) Case No. 2:09-bk-19848-EC
                                              ) Case No. 2:09-bk-19849-EC
15  □ Affects Karawia Industries, Inc. only   ) Case No. 2:09-bk-19850-EC
                                              ) Case No. 2:09-bk-19851-EC
16  ⊠ Affects International Protective         )
17  Services, Inc. only                       ) NOTICE OF MOTION AND MOTION
                                              ) PURSUANT TO FEDERAL RULE OF
18  ⊠ Affects U.S. Resource Services, Inc.     ) BANKRUPTCY PROCEDURE 9019 FOR
    only                                      ) ENTRY OF AN ORDER: (1) APPROVING
19                                            ) SETTLEMENT AGREEMENTS WITH
                                              ) CERTAIN ACCOUNT DEBTORS; (2)
20  ⊠ Affects U.S. Resource Facility Services, ) AUTHORIZING THE DEBTORS TO
    Inc. only                                 ) SETTLE OUTSTANDING ACCOUNTS
21                                            ) RECEIVABLE WITH OTHER ACCOUNT
    □ Affects International Armored            ) DEBTORS WITHOUT FURTHER
22  Solutions only                            ) HEARING AND NOTICE;
                                              ) MEMORANDUM OF POINTS AND
23  □ Affects Dekar Industries,               ) AUTHORITIES; DECLARATIONS OF
    Inc. only                                 ) CHARLES T. MOFFITT AND
24                                            ) ALEXANDER S. GAREEB IN SUPPORT
                                              ) THEREOF
25                                            )
                                              ) [NO HEARING REQUIRED PURSUANT TO
26                                            ) LOCAL BANKRUPTCY RULE 9013-1(o)(1)]
                                              )
27  _____

28

                               1

**TO THE HONORABLE ELLEN CARROLL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that International Protective Services, Inc. ("IPS"), U.S. Resource Services, Inc. ("CSI"), U.S. Resource Facility Services, Inc. ("TRC"), debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Debtors"), hereby file their motion (the "Motion") for entry of an order: (1) approving ten (10) settlements (the "Settlements") between the Debtors and certain pre-petition account debtors of the Debtors pursuant to Federal Rule of Bankruptcy Procedure 9019(a); and (2) authorizing the Debtors to settle outstanding accounts receivables owed to the Debtors by other pre-petition account debtors as set forth below pursuant to Federal Rule of Bankruptcy Procedure 9019(b).

The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on April 27, 2009 (the "Petition Date"). Prior to the Petition Date, the Debtors provided security and janitorial services to their customers (the "Customers") pursuant to various contracts (the "Contracts"). The Debtors sought payment from their Customers by issuing invoices (the "Invoices") to the Customers on a monthly basis. Shortly after the Petition Date, the Debtors ceased operating and were no longer able to perform under the Contracts. However, the Customers owed the Debtors certain amounts (the "Claimed Amounts") for pre-petition services the Debtors rendered to the Customers. The Debtors made demand upon the Customers for payment of the Claimed Amounts, but some of the Customers demanded certain offsets, refused to pay in full, or refused to pay an acceptable reduced amount.

As set forth more fully in the annexed memorandum of points and authorities (the "Memorandum") and the declarations of Charles T. Moffitt (the "Moffitt Declaration") and Alexander S. Gareeb (the "Gareeb Declaration") in support thereof, the Debtors have resolved

1  their various disputes with ten (10) Customers (the "Settling Customers") and entered into the

2  Settlements.    Pursuant to the Settlements, the Settling Customers shall pay the Debtors

3  approximately ninety five (95) percent of the Claimed Amounts (the "Settlement Amounts").

4  A true and correct copy of a list of the Settling Customers, the Claimed Amounts and the

5
6  Settlement Amounts is attached to the Moffitt Declaration as Exhibit "A."  The proposed

7  Settlements with the Settling Customers were negotiated in good faith and are fair and

8  reasonable and in the best interests of the Debtors and their estates.    The Settling Customers

9  have already paid the Debtors the Settlement Amounts, which are being held in the Debtors'

10  accounts pending Court approval of the Settlements.

11  Moreover, the Debtors respectfully request Court authority to settle other still pending

12  outstanding accounts receivable without any further approval from the Court provided that the
13
14  Senior Officer of the Debtors, Charles T. Moffitt, approves the settlements and that the

15  settlements are for seventy percent (70%) or more of the total amount owed by the Customer.

16  As set forth in the Memorandum, the Debtors believe that the foregoing is in the best interests

17  of the Debtors and the estates and will save the estates administrative costs and serve the

18  interests of judicial economy.

19  **PLEASE TAKE FURTHER NOTICE** that the Notice and the Motion are based upon

20
21  Federal Rule of Bankruptcy Procedure 9019, the annexed Memorandum, the Moffitt

22  Declaration and the Gareeb Declaration, the entire record of these cases, the statements,

23  arguments and representations of counsel to be made at the hearing on the Motion, if any, and

24  any other evidence properly presented to the Court.

25  **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rule 9013-1(g)(1), the

26  Debtors have requested that the Court rule upon the Motion without the need for a hearing

27  thereon.  Pursuant to Local Rule 9013-1(g)(1), any response to the Motion and request for a
28

3

1  hearing with respect thereto must be filed with the Clerk of the Bankruptcy Court and served

2  upon counsel for the Debtors at the address set forth in the upper left-hand corner of the first

3  page of this Notice and Motion within 15 days after the date of service of the Notice.

4      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

5
6  1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court

7  to constitute consent to the Court's granting of the relief sought by the Debtors.

8      **WHEREFORE,** the Debtors respectfully request that the Court enter an order:  (1)

9  granting the Motion in its entirety; (2) approving, pursuant to Federal Rule of Bankruptcy

10 Procedure 9019(a), the Settlements between the Debtors and the Settling Customers, as set

11 forth in Exhibit "A" and in the Memorandum; (3) authorizing the Debtors, pursuant to Federal

12
13 Rule of Bankruptcy Procedure 9019(b), to settle without any further approval from the

14 Bankruptcy Court outstanding accounts receivables owing by Customers for seventy percent

15 (70%) or more of the total amount owed by the Customer provided that the Senior Officer of

16 the Debtors, Charles T. Moffitt, approves the settlements; (4) and granting such other and

17 further relief as is just and proper under the circumstances.

18 Dated:  December 3, 2009          Karawia Industries, Inc. ("KII"), International
19                                   Protective Services, Inc. ("IPS"), U.S. Resource
                                     Services, Inc. ("CSI"), U.S. Resource Facility
20                                   Services, Inc. ("TRC"), International Armored
                                     Solutions ("IAS"), and Dekar Industries, Inc.
21                                   ("Dekar")

22

23
                                  By:_____
24                                     Tania M. Moyron
                                       LEVENE, NEALE, BENDER,
25                                     RANKIN & BRILL L.L.P.
                                       Attorneys for Chapter 11 Debtors and
26                                     Debtors in Possession

27

28

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.    BACKGROUND.**

1.    International Protective Services, Inc. ("IPS"), Karawia Industries, Inc. ("KII"), U.S. Resource Services, Inc. ("CSI"), U.S. Resource Facility Services, Inc. ("TRC"), International Armored Solutions ("IAS"), and Dekar Industries, Inc. ("Dekar")(collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), on April 27, 2009 (the "Petition Date").

2.    The Debtors continue to manage their financial affairs and bankruptcy estates as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

3.    Prior to the Petition Date, on and after May, 2008, certain or all of the Debtors entered into various loan agreements with Citibank N.A. ("Citibank") under which Citibank provided the Debtors with loan facilities. In order to avoid duplicating the basic background set forth in previous pleadings filed by the Debtors with the Court, the Debtors incorporate herein the basic background of these cases not included herein.

4.    Prior to the Petition Date, the Debtors provided security and janitorial services to their customers (the "Customers") pursuant to various contracts (the "Contracts"). The Debtors sought payment from their Customers by issuing invoices (the "Invoices") to the Customers on a monthly basis. Shortly after the Petition Date, the Debtors ceased operating and were no longer able to perform under the Contracts.

5.    However, the Debtors continued to own a substantial amount of accounts receivable (the "Accounts Receivable"). The Debtors continued to collect on outstanding Accounts Receivable and used those funds to pay down their outstanding indebtedness to

1    Citibank and to fund their operating expenses in accordance with the terms of various budgets

2    consented to by Citibank and approved by orders of the Court.   In connection with the "Initial

3    Cash Collateral Stipulation" between the Debtors and Citibank, the Debtors agreed to hire

4    Charles T. Moffitt (a highly experienced crisis manager/financial advisor) as an independent

5    person acceptable to Citibank as the senior corporate officer of the Debtors to manage the

6
     collection process and assess the on-going affairs of the Debtors (the "Senior Officer").
7

8         6.      While a number of the Debtors' outstanding Accounts Receivable were collected

9    by the Debtors, there remained a large amount of outstanding Accounts Receivable where the

10   Customers demanded certain offsets, refused to pay in full, or refused to pay an acceptable

11   reduced amount. As a result, the Debtors filed an application (the "Application") to employ the

12   Gareeb Firm to pursue collection lawsuits against those Customers on a contingency fee basis.

13
     At a hearing held on December 2, 2009, the Court approved the employment of the Gareeb
14
     Firm.
15

16   **B.     THE SETTLEMENT AGREEMENTS.**

17        7.      The Debtors (via the Gareeb Law Group) made further demand upon the

18   Customers for payment of the amounts the Debtors believed were owed by the Customers on

19   the Accounts Receivable (the "Claimed Amounts").

20
          8.      In order to resolve their disputes without the cost and time delay of litigation, the
21
     Debtors and certain of the Customers engaged in negotiations with respect to the Claimed
22

23   Amounts and the defenses of the Customers, including offsets asserted by the Customers for

24   damages incurred as a result of the Debtors' inability to perform under the Contracts after the

25   Debtors ceased operating their businesses.

26        9.      The Debtors reached ten (10) settlement agreements (the "Settlement
27
     Agreements") with certain Customers (the "Settling Customers"), which the Debtors believe
28

                                                    6

1   are in the best interest of the Debtors' estates.    In summary, the Settling Customers have

2   agreed to pay approximately ninety five (95) percent of the Claimed Amounts (the "Settlement

3   Amounts").  A true and correct copy of a list of the Settling Customers, the Claimed Amounts,

4   and the Settlement Amounts is attached to the annexed declaration of Charles T. Moffitt (the

5
   "Moffitt Declaration") as Exhibit "A."    The Debtors believe that the proposed Settlement
6
7   Agreements are in the best interest of the Debtors' estates and should be approved by the Court.

8         10.    Additionally, the Debtors respectfully request that the Gareeb Group have

9   authority to settle other outstanding Accounts Receivable for no less than seventy percent

10  (70%) of the total amount owed by the Customer without the need for any further approval

11  from the Court provided that the Senior Officer approves the settlements.

12

## II.

13

## DISCUSSION

14

15  **A.**    **THIS COURT SHOULD APPROVE THE SETTLEMENT AGREEMENTS.**

16         The authority granted a debtor in possession to compromise a controversy or agree to a

17  settlement is set forth in Federal Bankruptcy Rule 9019(a), which provides in pertinent part that

18  "[o]n motion by the[debtor in possession] and after notice and a hearing, the court may approve

19
   a compromise or settlement."    The decision of whether a compromise should be accepted or
20
   rejected lies within the sound discretion of the Court.  In re Mickey Thompson Entm't Group,
21
22  Inc., 292 B.R. 415, 422 (9th Cir. BAP 2003); Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir.

23  1995); In re Louise's, Inc., 211 B.R. 798 (D. Del. 1997); In re Goldstein, 131 B.R. 367, 369

24  (Bankr. S.D. Ohio 1991); In re Carson, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987).

25         The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy

26  court has great latitude in approving compromise agreements."    Woodson v. Fireman's Fund

27
   Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise
28

1  agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and

2  burdens associated with litigating sharply contested and dubious claims." Martin v. Kane (In re

3  A & C Properties), 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. denied 479 U.S. 854 (1986).

4  Accordingly, in approving a settlement agreement, the Court need not conduct an exhaustive

5
   investigation of the claims sought to be compromised. See United States v. Alaska Nat'l Bank
6
   (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the
7
8  Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable.

9  See In re A & C Properties, supra, 784 F.2d at 1381.

10     The Ninth Circuit Court of Appeals has identified the following factors for

11  consideration in determining whether a proposed settlement agreement is reasonable, fair and

12  equitable: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be
13
   encountered in the matter of collection; (iii) the complexity of the litigation involved, and the
14
15  expense, inconvenience and delay necessarily attendant to it; and (iv) the paramount interests of

16  creditors and a deference to their views. In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir.

17  1986); see also In re Mickey Thompson Entm't Group, Inc., 292 B.R. at 420.

18     A court should not substitute its own judgment for the judgment of the trustee or the

19  debtor in possession. Matter of Carla Leather, Inc., 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984).
20
   "It is sufficient that, after apprising itself of all facts necessary for an intelligent and objective
21
22  opinion concerning the claim's validity, the court determines that either (1) the claim has a

23  'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the

24  claim's litigation is 'doubtful.'" Matter of Walsh Const., Inc., 669 F.2d 1325, 1328 (9th Cir.

25  1982). A court, in reviewing a proposed settlement, "is not to decide the numerous questions of

26  law and fact but rather to canvass the issues and see whether the settlement 'fall[s] below the

27  lowest point in the range of reasonableness.'" In re Health Co. Intern, Inc., 136 F.3d 45, 51 (1st
28

1   Cir. 1998), accord In re W.T. Grant & Co., 699 F.2d 599, 608 (2nd Cir. 1983); see also In re

2   Pac. Gas And Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).  The court should not

3   conduct a "mini-trial" on the merits of the underlying cause of action.  New Concept Housing,

4   Inc. v. Arl W. Poindexter (In re New Concept Housing, Inc.), 951 F.2d 932, 939 (8th Cir.

5
    1991); Walsh Const., supra; In re Blair, 538 F.2d 849 (9th Cir. 1976).
6

7       The Debtors submit that the terms of the Settlement Agreements comport with the A &

8   C Properties standards and are in the best interests of the Debtors' bankruptcy estates.  The four

9   factors, pursuant to A & C Properties, to be considered in reaching the aforementioned

10  conclusion, are as follows:

11
        **1.      The probability of success in the litigation.**
12
        While the Debtors believe that they would ultimately be successful in any litigation with
13
    the Settling Customers, the legal and fact-specific nature of the disputes create the potential for
14
15  uncertain results, time delays and the need for trials given that they involve factual disputes.

16  There is a risk that the Settling Customers would be able to prove an amount of damages

17  related to the costs the Settling Customers incurred as a result of the Debtors' inability to

18  perform under the Contracts after the Debtors ceased operating.

19
        **2.      The difficulties in collection.**
20
        The Debtors were concerned that the Settling Customers would not pay the Claimed
21
22  Amounts as a result of the offsets the Customers asserted against the Debtors.  By resolving

23  these matters by way of the Settlement Agreements, the Debtors ensured that the estates would

24  receive approximately ninety five (95) percent of the Claimed Amounts without any risk of

25  nonpayment, and no further expenses for collection.

26  ///

27  ///

28

9

3. **The complexity of the litigation involved and the expense, inconvenience and delay attendant to it.**

The litigation to resolve the Claimed Amounts would be fact intensive and require trials to adjudicate these factual disputes if they are not resolved amicably.  Moreover, the Gareeb Firm would be entitled to 33% of any recovery obtained.  As a result, even if the Debtors went to trial, prevailed in the litigation, and collected the full amounts owed by the Customers, the net recovery by the Debtors after payment of the 33% contingency fee to the Gareeb Firm would be only 67%.  The Settlement Agreements allow the Debtors to recover ninety five (95) percent of the Claimed Amounts, which is nearly the equivalent of the Debtors' best case scenario. The nominal possible higher recovery of litigation these Claimed Amounts does not justify the risks, costs and delay of litigation.

4. **The interest of creditors.**

The paramount interest of creditors strongly weighs in favor of approving the Settlement Agreements.  The Settlement Agreements will result in immediate payment to the Debtors' estates, which will assist the Debtors to fund the costs of these estates, and enable the Debtors to avoid the delay and judicial resources which would be associated with litigation these matters to trial.  The Debtors are hopeful of resolving and ending these bankruptcy cases in an expeditious manner, which would not be possible if the Debtors proceed to trial to resolve these disputes.  The Settlement Agreements resolve any and all issues related to any offsets alleged by the Settling Customers.  Under these circumstances, the Debtors believe the benefits to their estates are substantial, and the interests of creditors are best served by Court approval of the Settlement Agreements.

///

///

///

10

**B.   THE COURT SHOULD AUTHORIZE THE DEBTORS TO SETTLE THE CLAIMED AMOUNTS AGAINST OTHER CUSTOMERS PURSUANT TO BANKRUPTCY RULE 9019(B).**

Bankruptcy Rule 9019(b) provides that:

> After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the [debtor in possession] to compromise or settle controversies with such class or classes without further hearing or notice.

Fed. R. Bankr. P. 9019(b).

As discussed above, the Debtors seek authority from the Bankruptcy Court to settle outstanding Accounts Receivable with other Customers for seventy percent (70%) or more of the total amount owed by the Customer without any further approval from the Bankruptcy Court, provided that Mr. Moffitt (as the Senior Officer of the Debtors) approves the settlements.  The Debtors submit that authorizing the Debtors to settle with their remaining Customers on the foregoing terms is in the best interest of their estates and will save the estates administrative costs and serve the interests of judicial economy.

### III.

### CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order: (1) granting the Motion in its entirety; (2) approving, pursuant to Federal Rule of Bankruptcy Procedure 9019(a), the Settlements between the Debtors and the Settling Customers, as set forth in Exhibit "A" attached to the Moffitt Declaration; (3) authorizing the Debtors, pursuant to Federal Rule of Bankruptcy Procedure 9019(b), to settle without any further approval from the Bankruptcy Court outstanding accounts receivables with Customers for seventy percent

///

///

11

1 (70%) or more of the total amount owed by the Customer provided that the Senior Officer of

2 the Debtors, Charles T. Moffitt, approves the settlements; (4) and granting such other and

3 further relief as is just and proper under the circumstances.

4 Dated: December 3, 2009

Karawia Industries, Inc. ("KII"), International Protective Services, Inc. ("IPS"), U.S. Resource Services, Inc. ("CSI"), U.S. Resource Facility Services, Inc. ("TRC"), International Armored Solutions ("IAS"), and Dekar Industries, Inc. ("Dekar")

By: _____

Ron Bender
Tania M. Moyron
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
Proposed Attorneys for
Chapter 11 Debtors and Debtors in Possession

12

## DECLARATION OF CHARLES T. MOFFITT

I, Charles T. Moffitt, hereby declare as follows:

1.    I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.    Pursuant to that certain "Initial Cash Collateral Stipulation" between the above-captioned debtors (collectively, the "Debtors") and Citibank N.A. ("Citibank"), I am the senior corporate officer of the Debtors.

3.    I make this Declaration in support of the motion (the "Motion") for entry of an order: (1) approving ten (10) settlements (the "Settlements") between the Debtors and certain pre-petition account debtors of the Debtors pursuant to Federal Rule of Bankruptcy Procedure 9019(a); and (2) authorizing the Debtors to settle outstanding accounts receivables owed to the Debtors by other pre-petition account debtors as set forth below pursuant to Federal Rule of Bankruptcy Procedure 9019(b).

4.    The Debtors filed voluntary petitions under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), on April 27, 2009 (the "Petition Date").

5.    The Debtors continue to manage their financial affairs and bankruptcy estates as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

6.    Prior to the Petition Date, on and after May, 2008, certain or all of the Debtors entered into various loan agreements with Citibank N.A. ("Citibank") under which Citibank provided the Debtors with loan facilities.

7.    Prior to the Petition Date, the Debtors provided security and janitorial services to their customers (the "Customers") pursuant to various contracts (the "Contracts"). The Debtors sought payment from their Customers by issuing invoices (the "Invoices") to the Customers on

13

1  a monthly basis. Shortly after the Petition Date, the Debtors ceased operating and were no
2  longer able to perform under the Contracts.

3      8.      However, the Debtors continued to own a substantial amount of accounts
4  receivable (the "Accounts Receivable"). The Debtors continued to collect on outstanding
5
6  Accounts Receivable and used those funds to pay down their outstanding indebtedness to
7  Citibank and to fund their operating expenses in accordance with the terms of various budgets
8  consented to by Citibank and approved by orders of the Court.

9      9.      While a number of the Debtors' outstanding Accounts Receivable were collected
10  by the Debtors, there remained a large amount of outstanding Accounts Receivable where the
11  Customers demanded certain offsets, refused to pay in full, or refused to pay an acceptable
12  reduced amount. As a result, the Debtors filed an application (the "Application") to employ the
13
14  Gareeb Firm to pursue collection lawsuits against those Customers on a contingency fee basis.
15  At a hearing held on December 2, 2009, the Court approved the employment of the Gareeb
16  Firm.

17      10.     The Debtors made further demand upon the Customers for payment of the
18  amounts the Debtors believed were owed by the Customers on the Accounts Receivable (the
19  "Claimed Amounts"). In order to resolve their disputes without the cost and time delay of
20  litigation, the Debtors and certain of the Customers engaged in negotiations with respect to the
21
22  Claimed Amounts and the defenses of the Customers, including offsets asserted by the
23  Customers for damages incurred as a result of the Debtors' inability to perform under the
24  Contracts after the Debtors ceased operating their businesses.

25      11.     The Debtors reached ten (10) settlement agreements (the "Settlement
26  Agreements") with certain Customers (the "Settling Customers"). In summary, the Settling
27  Customers have agreed to pay approximately ninety five (95) percent of the Claimed Amounts
28

14

(the "Settlement Amounts"). A true and correct copy of a list of the Settling Customers, the Claimed Amounts, the Settlement Amounts is attached as Exhibit "A."

12. I believe that the proposed Settlement Agreements are in the best interest of the Debtors' estates and should be approved by the Court. While the Debtors may ultimately be successful in any litigation with the Settling Customers, the legal and fact-specific nature of the disputes create the potential for uncertain results and time delays. By resolving these matters by way of the Settlement Agreements, the Debtors ensured that the estates would receive approximately ninety five (95) percent of the Claimed Amounts without any risk of nonpayment, and no further expenses for collection.

13. I believe the paramount interest of creditors strongly weighs in favor of approving the Settlement Agreements. The Settlement Agreements will result in immediate payment to the Debtors' estates, which will assist the Debtors to fund the costs of these estates, and enable the Debtors to avoid the delay and judicial resources which would be associated with litigation these matters to trial. The Debtors are hopeful of resolving and ending these bankruptcy cases in an expeditious manner, which would not be possible if the Debtors proceed to trial to resolve these disputes. The Settlement Agreements resolve any and all issues related to any offsets alleged by the Settling Customers. Under these circumstances, the Debtors and I believe the benefits to their estates are substantial, and the interests of creditors are best served by Court approval of the Settlement Agreements.

14. Additionally, the Debtors and I respectfully request that the Gareeb Group have authority to settle other outstanding Accounts Receivable for no less than seventy percent (70%) of the total amount owed by the Customer without the need for any further approval from the Court provided that I approve the settlements. I believe that authorizing the Debtors

FROM                                    (THU)DEC  3 2009 14:59/ST. 14:56/NO. 6330119931 P 17

1    to settle with their remaining Customers on the foregoing terms is in the best interest of their

2    estates and will save the estates administrative costs and serve the interests of judicial economy.

3        I declare under penalty of perjury under the laws of the United States of America that

4    the foregoing is true and correct to the best of my knowledge.

5        Executed on this 3rd day of December, 2009, at Los Angeles, California.

6

7

8               CHARLES T. MOFFITT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DECLARATION OF ALEXANDER S. GAREEB**

2      I, ALEXANDER S. GAREEB, hereby declare as follows:

3      1.      I have personal knowledge of the matters set forth below and, if called as a

4   witness, I would and could competently testify thereto.

5
6      2.      I am an attorney licensed to practice law in the State of California. I am also

7   the principal of Gareeb Law Group APC.

8      3.      I make this Declaration in support of the motion (the "Motion") for entry of an

9   order: (1) approving ten (10) settlements (the "Settlements") between the Debtors and certain

10  pre-petition account debtors of the Debtors pursuant to Federal Rule of Bankruptcy Procedure

11  9019(a); and (2) authorizing the Debtors to settle outstanding accounts receivables owed to the

12  Debtors by other pre-petition account debtors as set forth below pursuant to Federal Rule of

13  Bankruptcy Procedure 9019(b).
14

15     4.      The Debtors filed voluntary petitions under chapter 11 of title 11, United States

16  Code, on April 27, 2009 (the "Petition Date").

17     5.      Prior to the Petition Date, the Debtors provided security and janitorial services to

18  their customers (the "Customers") pursuant to various contracts (the "Contracts"). The Debtors

19  sought payment from their Customers by issuing invoices (the "Invoices") to the Customers on

20  a monthly basis. Shortly after the Petition Date, the Debtors ceased operating and were no

21  longer able to perform under the Contracts.
22

23     6.      However, the Debtors continued to own a substantial amount of accounts

24  receivable (the "Accounts Receivable").

25     7.      While a number of the Debtors' outstanding Accounts Receivable were collected

26  by the Debtors, there remained a large amount of outstanding Accounts Receivable where the

27  Customers demanded certain offsets, refused to pay in full, or refused to pay an acceptable
28

17

reduced amount. As a result, the Debtors filed an application (the "Application") to employ my firm to pursue collection lawsuits against those Customers on a contingency fee basis. At a hearing held on December 2, 2009, the Court approved the Application.

8.    I, on behalf of the Debtors, made further demand upon the Customers for payment of the amounts the Debtors believed were owed by the Customers on the Accounts Receivable (the "Claimed Amounts"). In order to resolve the disputes without the cost and time delay of litigation, I entered, on behalf of the Debtors, into certain negotiations with Customers with respect to the Claimed Amounts and the defenses of the Customers, including offsets asserted by the Customers for damages incurred as a result of the Debtors' inability to perform under the Contracts after the Debtors ceased operating their businesses.

9.    Ten (10) settlement agreements (the "Settlement Agreements") have been reached between the Debtors and certain Customers (the "Settling Customers"). In summary, the Settling Customers have agreed to pay approximately ninety five (95) percent of the Claimed Amounts (the "Settlement Amounts"). A true and correct copy of a list of the Settling Customers, the Claimed Amounts and the Settlement Amounts is attached as Exhibit "A."

10.    I believe that the proposed Settlement Agreements are in the best interest of the Debtors' estates and should be approved by the Court. While the Debtors believe that they would ultimately be successful in any litigation with the Settling Customers, the legal and fact-specific nature of the disputes create the potential for uncertain results, time delays and the need for trials given that they involve factual disputes. There is a risk that the Settling Customers would be able to prove an amount of damages related to the costs the Settling Customers incurred as a result of the Debtors' inability to perform under the Contracts after the Debtors ceased operating. By resolving these matters by way of the Settlement

1  Agreements, the Debtors ensured that the estates would receive approximately ninety five

2  (95) percent of the Claimed Amounts without any risk of nonpayment, and no further

3  expenses for collection.

4       11.    I believe that the litigation to resolve the Claimed Amounts would be fact
5
   intensive and require trials to adjudicate these factual disputes if they are not resolved
6
7  amicably. The nominal possible higher recovery of litigation these Claimed Amounts does not

8  justify the risks, costs and delay of litigation. Based on the foregoing, I respectfully request

9  that the Court approve the Settlement Agreements.

10      I declare under penalty of perjury that the foregoing is true and correct to the best of

11  my knowledge.

12       Executed on this 3rd day of December 2009 at Los Angeles, California.
13

14

15                                     ALEXANDER S. GAREEB

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   19

# EXHIBIT "A"

## INTERNATIONAL PROTECTIVE SERVICES

| Customer Name | Customer Owed | Settled For |
|---|---|---|
| City Sea Foods | $11,403.62 | $11,000.00 |
| County of Orange | $10,428.77 | $9,675.68 |
| Rusnak BMW/Dev . Mgmnt Corp. | $9,632.00 | $8,632.00 |
| Sinanian Development, Inc. | $7,720.60 | $6,720.60 |
| Foundry Lofts, LLC | $7,372.90 | $1,800.00 |
| Housing Authority of The City of Los Angeles | $60,573.67 | $68,486.60 |
| Qantas Airways Ltd. L.A. International | $17,667.00 | $16,044.64 |
| Redwood Lofts, LLC | $5,175.00 | $3,450.00 |
| Sentinel Real Estate Corp. | $3,408.00 | $2,736.00 |

## CSI

| Customer Name | Customer Owed | Settled For |
|---|---|---|
| Sinanian Development, Inc. | $12,530.70 | $10,279.40 |
| Lion Real Estate Group | $3,213.00 | $2,731.05 |

| In re:<br>KARAWIA INDUSTRIES, INC., a California corporation, et al. (LEAD CASE),<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-19846-EC |
| --- | --- |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR ENTRY OF AN ORDER: (1) APPROVING SETTLEMENT AGREEMENTS WITH CERTAIN ACCOUNT DEBTORS; (2) AUTHORIZING THE DEBTORS TO SETTLE OUTSTANDING ACCOUNTS RECEIVABLE WITH OTHER ACCOUNT DEBTORS WITHOUT FURTHER HEARING AND NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF CHARLES T. MOFFITT AND ALEXANDER S. GAREEB IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On December 3, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Ron Bender    rb@lnbrb.com
- Russell Clementson    russell.clementson@usdoj.gov
- Barry S Glaser    bglaser@swjlaw.com
- Peter L Isola    peterisola@dwt.com
- Robert F Kidd    robert@donahue.com
- Andy Kong    Kong.Andy@ArentFox.com
- Mette H Kurth    kurth.mette@arentfox.com
- Alvin Mar    alvin.mar@usdoj.gov
- Tania M Moyron    tmm@lnbrb.com
- Carmela Pagay    cpagay@rdwlawcorp.com
- Mark Palley    mp@marionsinn.com
- Dace Pavlovskis    Dace.Pavlovskis@sba.gov
- Christian L Raisner    bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net
- Christopher O Rivas    crivas@reedsmith.com
- Michael W Tan    michael.w.tan@irscounsel.treas.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Beth Ann R Young    bry@lnbrb.com
- Aleksandra Zimonjic    azimonjic@lblawllp.com, azimonjic@lblawllp.com;kmoss@lblawllp.com

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On December 3, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

## SEE ATTACHED LIST – ALL ENTITIES SERVED VIA UNITED STATES MAIL

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 3, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**

| In re:<br>KARAWIA INDUSTRIES, INC., a California corporation, et al. (LEAD CASE),<br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-19846-EC |
|---|---|

Courtesy Copy to Judge's Chambers Via Attorney Service
The Hon. Ellen Carroll
United States Bankruptcy Court
Courtroom 1639
255 East Temple Street
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 3, 2009 | John Berwick | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                **F 9013-3.1**

Karawia Industries, Inc., et al.
RSN + Committee
File No. 4395

Karawia Industries, Inc., et al.
3771 W. 242nd Street
Torrance, CA 90505

RSN- Counsel for Citibank
Mary H. Haas, Esq.
Davis Wright Tremaine LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017

RSN- Counsel for Citibank
Harvey S. Schochet, Esq.
Davis Wright Tremaine LLP
505 Montgomery St., Ste. 800
San Francisco, CA 94111-6533

RSN
Victor Joseph Stubbs, Esq.
Stubbs Alderton & Markiles LLP
15260 Ventura Blvd 20FL
Sherman Oaks, CA 91403

RSN-Receiver- Int'l Services
TCC Swan Way LLC Receivership
c/o Susan L. Uecker, Receiver
Uecker & Associates, Inc.
100 Pine Street, Suite 475

RSN
L.A. County Treasurer and Tax Collector
Attn: Man-Ling Kuo, Tax Services Clerk I
P.O. Box 54110
Los Angeles, CA 90054-0110

RSN
Rolando A. Concha Sr.
c/o EWB
2090 Huntington Drive
San Marino City, CA 91108

Creditors' Committee Member
Think Green Land Care
c/o Lorena Garcia
2069 E. 120th Street
Los Angeles, CA 90059

Creditors' Committee Member
Orange County Valet,
Security And Patrol Inc.
1121 Kings Road
Newport Beach, CA 92663

Creditors' Committee Member
Lillian Lambert
Shelton H. Skolnick
Skolnick & Leishman, P.C.
14300 Gallant Fox Lane, Ste 212
Bowie, MD 20715

Creditors' Committee Member
Mike Farman
4187 Maritime Rd.
Rancho Palos Verdes, CA 90275

Business and Financial Advisor to
Creditors' Committee
Richard Feferman, CIRA
Corporate Recovery Associates
3830 Valley Center Dr; Ste 705-152
San Diego, CA 92130

City Sea Foods
531 Towne Avenue
Los Angeles, CA 90013

County of Orange
1750 South Douglas Road
Anaheim, CA 92806

Rusnak BMW/Dev. Mgmnt Corp.
285 West Colorado Boulevard
2nd Floor
Pasadena, CA 91117

Sinanian Development, Inc.
18980 Ventura Boulevard # 200
Tarzana, CA 91356

Foundry Lofts, LLC
26 Technology Drive
Irvine, CA 92618

Housing Authority of The City of Los
Angeles-Public Safety Department
2600 Wilshire Boulevard, 4th Floor
Los Angeles, CA 90057

Qantas Airways Ltd. L.A. International
6555 West Imperial Highway
Los Angeles, CA 90045

Qantas Airways Ltd. L.A. International
c/o Rod D. Margo/Stephen M. Rinka
Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, CA 90067-6010

Redwood Lofts, LLC
4055 Redwood Avenue
Marina del Rey, CA 90292

Sentinel Real Estate Corp.
36630 Barton Road
Redlands, CA 92373

Lion Real Estate Group
11611 San Vicente Boulevard # 650
Los Angeles, CA 90049

Proposed Special Counsel
Alexander S. Gareeb, Esq.
Gareeb Law Group APC
21333 Oxnard St 2nd FL
Woodland Hills, CA 91367